## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

NASSER BASHIRI and )
NANCY BASHIRI, )
                )
         Plaintiff, )
                )
vs. )      Case No. CV 07 2268
                )
VINCENT SADLER, RICHARD T. )
REIBMAN, and SCHWARTZ COOPER )
CHARTERED, )
                )
         Defendants. )

## DECLARATION OF RICHARD T. REIBMAN
## IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

I, Richard T. Reibman, state:

1.     I am over the age of 21. The matters set forth herein are made on my personal knowledge, and, if sworn as a witness, I can testify competently to them.

2.     I am an attorney licensed to practice law in the State of Illinois.

3.     I am one of the attorneys at the law firm of Schwartz Cooper, Chartered currently representing Defendant Vincent Sadler ("Sadler") in an action pending before Judge Wayne Andersen in the United States District Court for the Northern District of Illinois, Eastern Division, entitled *Vincent Sadler v. Nasser Bashiri and Nancy Bashiri*, Case No. 07 C 5464 (the "Illinois Action").

4.     As part of my duties as one of the attorneys for Sadler in the Illinois Action, I am responsible for filing pleadings, motions and other documents with the Court. As a counsel of record in the Illinois Action, I receive pleadings, motions and other documents filed by the

defendants, Nasser Bashiri and Nancy Bashiri (the "Bashiris"). I am familiar with all of the documents filed in the Illinois Action and have personally reviewed each of them.

5.    The Complaint in the Illinois Action was filed on September 27, 2007. A copy of the Complaint is attached as Exhibit A to the Complaint filed herein by the Bashiris.

6.    On October 24, 2007, the Bashiris filed in the Illinois Action a document entitled "Answer and Counter Complaint" a copy of which is attached hereto as Exhibit A.

7.    On October November 7, 2007, the Bashiris filed in the Illinois Action a document entitled "Defendants' First Amended Counter Complaint Against Plaintiff Vincent Sadler," a copy of which is attached as Exhibit B.

8.    On December 14, 2007, the Bashiris filed in the Illinois Action a document entitled "Initial Status Report," a copy of which is attached hereto as Exhibit C.

9.    On December 19, 2007, Sadler filed in the Illinois Action a Motion for Summary Judgment. In support of his motion for summary judgment Sadler filed two documents—a Memorandum of Law In Support of Summary Judgment Motion and a Statement of Material Facts in Support of Summary Judgment Motion, a copy of the latter document is attached hereto as Exhibit D.

10.    The Statement of Material Facts in Support of Summary Judgment Motion was supported by seven Declarations by seven different individuals—one of them being Debra MacDonald.

11.    A copy of the Declaration of Debra MacDonald is attached hereto as Exhibit E.

12.     The Bashiris were required to file their response to Sadler's Motion for Summary Judgment and his Statement of Material Facts in Support of Summary Judgment in the Illinois Action on or before January 18, 2008.

13.     On January 18, 2008, the Bashiris filed a response to Sadler's Motion for Summary Judgment in the Illinois Action.  The Bashiris, however, did not file any response to Sadler's Statement of Material Facts in Support of Summary Judgment.

14.     On January 31, 2008, the Bashiris filed in the Illinois Action, a document entitled "Defendants' Reply to Plaintiff's Response to Plaintiff's Motion to Dismiss and Request for Hearing," a copy of which is attached hereto as Exhibit F.

15.     On January 31, 2008, Sadler filed in the Illinois Action, his reply in support of his Motion for Summary Judgment thereby completing all briefing on Sadler's summary judgment motion.

16.     Attached hereto as Exhibit G is a Special Condominium Warranty Deed showing that Nasser Bashiri and Bashiri's father-in-law, Michael B. Davidson ("Davidson") are co-owners of a property in Naples Florida.  At the time the parties entered into the Settlement Agreement (attached as Exhibit A to Sadler's Complaint), Davidson had no interest in this property.

17.     Attached as Exhibit H is a listing for the sale of a condominium (28677 San Lucas Lane # 101) in Bonita Springs, Florida owned by Sadler and Nasser Bashiri.  Sadler did not authorize the listing of this property for sale.

468278.2 050669-38762

18.    Attached as Exhibit H-1 action is a letter I prepared and sent to Glen Ginsburg advising him that Sadler was the beneficial owner of the condominium, 28677 San Lucas Lane # 101, and that Sadler did not consent to the listing or sale of the condominium.

19.    On November 26, 2007, the Bashiris filed in the Illinois Action, a document entitled, "Motion to Dismiss, Or, In the Alternative, to Transfer the Case to Another District," a copy of which is attached hereto as Exhibit I.   This is the first time that the Bashiris sought to have Sadler's case removed from the Court in Illinois.

20.    I hereby declare under penalty of perjury that the foregoing statements are true and correct.

Executed on March 1 4 , 2008

_____
Richard T. Reibman

468278.2 050669-38762

EXHIBIT A

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT SADLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. __07C 5464__ |
| | ) | |
| NASSER BASHIRI and NANCY | ) | |
| BASHIRI, husband and wife | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

OCT 2 4 2007

OCT 24 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### ANSWER AND COUNTER COMPLAINT

Defendant Nasser Bashiri, representing himself, answers the complaint of the Plaintiff Vincent Sadler and enters counter complaint against Vincent Sadler as follows:

#### Background and Nature of Case

1. Defendant did not first approach Plaintiff regarding real estate investment. Plaintiff told Defendant's mother-in-law that he was interested in leaving the stock market as it was stressful and time consuming and asked what her son in law did for a living. She replied that he invested in real estate and had been successful. The Plaintiff then started to talk to the Defendant about real estate investment, to which the Defendant gave him some information. As they developed a relationship, and the Plaintiff expressed to the Defendant that he would like to get out of the stock market, the Defendant and Plaintiff mutually agreed to invest in real estate. Plaintiff already owned investment properties in various locations.

2. The Defendant never forced the Plaintiff to put down payments on the properties. The Plaintiff chose to as the Defendant would be paying interest on half of it. In fact, the Plaintiff insisted on paying cash for some of the properties, even at the insistence of the Defendant that this was not a good idea in real estate investment. The LaBarranca lot was purchased through M&I bank. After the property was closed the Plaintiff decided to pay cash for the lot without the Defendant's knowledge or permission. His reason was that his money was sitting in the bank and was getting a low interest rate and this way he could collect a higher interest rate via the

1

Defendant. He also insisted on paying cash for the Back O'Beyond lot and 300 Morphew Lane. At the meeting on October 4, 2006 it was discovered that although the Plaintiff's spreadsheet showed that there was a mortgage with a bank on 28658 San Lucas Lane and that the Defendant was being charged interest on that property in accordance with the mortgage, the Plaintiff had actually paid cash for the property without notifying the Defendant.

3.    The Plaintiff repeatedly refused to take the advice of the Defendant regarding the sale, rent and or construction of the properties. The Plaintiff led the Defendant to believe that he would build on the Sedona lots, even meeting with the architect regarding building on both lots and allowing the Defendant to make a $5,000 payment to the builder which was non-refundable. The Defendant also paid for the complete blue print for the house to be built on the LaBarranca lot which cost the Defendant over $3,000. Topographic surveys were obtained for both lots at a cost of $3,400. The Defendant had successfully built and sold spec homes for a profit in Sedona previously, during and after business with the Plaintiff. In 2005, the real estate market, particularly for new construction was still strong. At the October 2006 meetings, when questioned by the mediators, Plaintiff stated that he never had any intention of building on the lots. This was over a year after the purchase of the lots that the Defendant had continued to pay for.

4.    Defendant believes that the Plaintiff never intended a Partnership but was looking for a place to invest his money where he could receive interest, raising it at will and having the Defendant pay for his properties while they appreciated, when he could then sell them and keep all the profit and income as the properties were solely in his name. This was evidenced at a meeting that the Defendant and the Plaintiff had with the Escrow Manager at Capital Title Agency, Inc. in Cottonwood, AZ when they were filling out paperwork in connection with the properties. The Defendant was involved in other real estate business before the partnership which the Plaintiff understood would continue. At the meeting the Plaintiff asked the Escrow Officer if she knew anyone that he could lend money to for interest in connection with real estate. She referred him to the Defendant who already had a private lender he had been using in Sedona for his spec homes for several years. The Plaintiff asked if he could lend the Defendant money and he would give it to him at a lower interest rate. The Defendant agreed and the paperwork was drawn up and the account was managed by the title company. The Plaintiff lent

2

the Defendant $200,000 interest only on a two (2) year note with guaranteed six (6) months interest. After few months, the Plaintiff demanded his money, saying he needed it right away. The Defendant repaid the loan and was unable to use it for the spec home. The Plaintiff also kept the pre-payment penalty. At the October 4, 2006 meeting the Plaintiff accused the Defendant of not paying the loan. The paperwork from Capital Title Agency was produced showing the payoff. Several months later the Plaintiff put down 30% on units at Lakeland Harbor in Hot Springs, Arkansas totaling approximately $350,000 and demanded that the Defendant pay 10.25%, which was much higher than the approximately 7% a bank would have charged on 30% down. The Defendant had repeatedly asked the Plaintiff to put 10% down. The money that was used by the Plaintiff to put 30% down included the $200,000 that the Defendant had returned to the Plaintiff several months earlier. The Defendant had been paying 8% on the note through Capital Title Agreement for his personal venture which he was not able to follow through with. The Plaintiff's claim that he needed the money because he was short on cash was obviously not true as he was able to put so much down for the Lakeland Harbor properties. This followed his pattern of Plaintiff raising interest rates along the way whenever he felt like it without any agreement from the Defendant.

6. The Plaintiff also accused the Defendant of getting a rent check directly from Hot Springs Vacation Rentals for one of the Lakeland Harbor units and keeping the money. The property was solely in the Plaintiff's name, although the Defendant had been paying his share and had furnished two of the units out of pocket, never being reimbursed or getting his half of the rental income. A copy of the rent check was produced showing it was made payable to and had been sent directly to the Plaintiff.

7. As the Plaintiff has breached three (3) agreements; the original May 4, 2005 Partnership agreement, the Articles of Incorporation and the October 5, 2006 agreement, the Defendant feels he is entitled to damages for extortion, fraud, breach of contract, defamation of character and financial hardship caused by the Plaintiff's actions throughout the past two years.

8. Plaintiff claims that he did not agree to the first contract of May 4, 2005 because he did not want the Defendant's wife to list the properties. Documents were provided to the mediators that showed that the Plaintiff indeed not only listed the properties with the Defendant's wife, but

3

that he personally requested her to list his property again, after they had mutually agreed that he
would work with another agent he knew and had worked with previously from her office. ant.
The Articles of Incorporation also show that the Defendant and Plaintiff were partners and there
are certain things the Defendant is entitled to as an officer of the Corporation.

9.  As the Plaintiff followed the very content of the May 4, 2005 contract by contacting the
mediators in Chicago as outlined in that agreement in case of a dispute that was unable to be
resolved, this is yet another reason it is obvious that he had agreed to the May 4, 2005 contract.
The mediators did decide and informed the Defendant that the first contract was valid, even
without a copy signed by the Plaintiff. The Defendant was encouraged by the mediators to
"allow himself to be wronged" in regards to the money he had paid, that Plaintiff owed him, in
order to bring about peace.

10. Although the Defendant had agreed to allow himself to be wronged in the amount of over
$120,000 that he had paid the Plaintiff by the date of the October 2006 meetings, the Plaintiff
would not allow him to walk away, even though the Defendant would have suffered a loss of all
the money he had paid, time and effort he could have spent on his own ventures, travel, expense,
etc. and the properties were still solely in the Plaintiff's name, interest rates had consistently
been raised with no regard to the Defendant's right as a Partner, and none of the income received
in regards to the properties the Defendant had been paying for had been given to the Defendant
by the Plaintiff. The Defendant was not on the ARC Investment Bank Account which showed
co-mingled funds. The properties were never put in the Corporation, as the Plaintiff had said
was the reason for forming the Corporation. Copies of the tax returns or the general ledger were
not provided from the Plaintiff, although the Defendant had repeatedly requested them and the
mediators had received copies of these requests.

11. On October 5, 2006 the night the agreement was to be signed, Plaintiff demanded money
for properties which were solely under his name when he had already taken possession of the
properties from October 5, 2006 forward. The Plaintiff still demanded the payments for the
month of October 2006. This was brought to the attention of the mediators and the Plaintiff's
reasoning was that he had already mailed the checks. Again, this was a false statement, because

4

he paid cash for several of the properties which did not require payments to a mortgage company.

12. At the October 5, 2006 meeting, the Plaintiff claimed that he was paying 8.25% interest for the properties to the banks.  Again, this was a false statement, because the Plaintiff's spreadsheet showed some of the properties were as low as 6.5% and others had been paid for in cash.  The Defendant brought this to the attention of the mediators and faxed them the spreadsheet that the Plaintiff had provided showing this inaccuracy.  This pattern again shows that the Plaintiff's primary agenda was to collect interest on his money and not in a real estate investment partnership.  The Defendant fully believed that he did not return the signed purchase contracts for the Sedona lots so that he could force the Defendant into the extorted 14% interest.

Answer to Complaint, Case No. 07CV 5464

- <u>Palmira 28677 San Lucas Drive (see Plaintiff's Count I)</u>: Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

  As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

  As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

  The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

  1. Signed Purchase Contract for Back-O-Beyond
  2. Signed Purchase Contract for La Barranca
  3. Articles of Incorporation
  4. $40,000 for 28677 San Lucas
  5. $20,000 for Morphew Lane
  6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

- <u>14630 Meravi Drive (See Plaintiff's Count II)</u>: Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

6

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

- Aviano 21911 N. 36th St. (See Plaintiff's Count III): Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation

4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

• <u>Back O'Beyond (See Plaintiff's Count IV)</u>: Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

• <u>La Barranca (See Plaintiff's Count V)</u>: Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach

8

of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

- **Palmira 28658 San Lucas (See Plaintiff's Count VI)**: Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

- Quartz Cove (See Plaintiff's Count VII): Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

- Heritage Bay (See Plaintiff's Count VIII): Defendant was the first one to perform on his obligations in the October 5, 2006 settlement agreement. Defendant sent three (3) checks totaling the amount of $54,246.90 in accordance with the October 5, 2006. Checks were sent directly to the Plaintiff, not to the mediators, as there was no provision for the mediators to handle purchase contracts, funds, or other legal documents. Plaintiff did not perform any of the items set out for him in the October 5, 2006 agreement, even after repeated requests from the Defendant to do so. After continued unresponsiveness in performing

these items, Defendant sent a letter to the Plaintiff and Mediators demanding performance in forty-eight hours or the Defendant would consider the Plaintiff in breach of contract and would consider the agreement of October 5, 2006 invalid. Plaintiff has still, to date, not performed any of the items on the October 5, 2006 agreement.

As the Plaintiff did not sign or return Purchase Contracts provided to him by Capital Title Agency of Cottonwood, Arizona for either the Back O'Beyond or La Barranca lots, the Plaintiff prevented the Defendant from even purchasing the properties, thus extorting 14% interest.

As the Plaintiff's non-performance and extorting higher interest rates are a historical pattern from the original Partnership Agreement as of May 4, 2005, the Defendant had no reason to believe that this time would be any different.

The Defendant did not receive any of the following in reference to the October 2006 agreement, although the Defendant had been first to perform:

1. Signed Purchase Contract for Back-O-Beyond
2. Signed Purchase Contract for La Barranca
3. Articles of Incorporation
4. $40,000 for 28677 San Lucas
5. $20,000 for Morphew Lane
6. Any funds for the 50% expenses that the Plaintiff was to pay on 21911 N. 36th St. (Aviano)

## Counter Complaint, Case No. 07CV 5464

Defendant's Request for judgment in reference Counter Complaint filed against Plaintiff, Vincent Sadler by Defendant, Nasser Bashiri.

The Defendant prays for the entry of a judgment in his favor against the Plaintiff, Vincent Sadler in reimbursement for the amounts as follows:

$ 5,000.00    Initial Deposit to Builder (Aspen Rein) for LaBarranca Lot
$ 2,900.00    Preliminary Plan from Mark Murray for LaBarranca Lot
$ 3,900.00    Preliminary Plan from Mark Murray for Back O'Beyond Lot
$ 1,750.00    Architectural Committee for Approval of Preliminary Plan for Back O'Beyond Lot
$ 18,000.00   10 months of rent @ $1,800.00/month for 28677 San Lucas
$154,318.83   Period from June 2005 through November 2006 of payments made by Defendant to
              Plaintiff for properties solely in Plaintiff's name

**$185,868.83    TOTAL PRINCIPAL AMOUNT**

The Defendant respectfully requests the court to grant interest on the $185,868.83 in an amount to be determined by the Court as fair and reasonable based on the accrued interest that the Plaintiff has demanded in his complaint and granting such other relief as the Court deems just and proper, resulting from the liquidation of the Defendant's other assets. The Defendant also requests $300,000 in damages due to the Plaintiff's refusal to build on the Back O'Beyond and LaBarranca lots in 2005.

Dated:  October 19, 2007                    Respectfully submitted,

                                            NASSER BASHIRI

                                            _Nasser Bashiri_

THIS ANSWER AND COUNTER COMPLAINT ARE ATTACHED TO THE ORIGINAL SUMMONS AND COMPLAINT, CASE NO. 07CV 5464, SERVED TO DEFENDANTS ON WEDNESDAY, OCTOBER 10, 2006 AND ARE SENT AS OF OCTOBER 19, 2006 TO THE FOLLOWING:

PLAINTIFF'S ATTORNEY:

| | | |
|---|---|---|
| Patrick T. Stanton | AND | Attn:  Intake Desk |
| Richard T. Reibman | | Ref: Case #07CV 5464, Judge Andersen |
| Schwartz Cooper Chartered | | United States District Court |
| 180 N. LaSalle St., Suite 2700 | | Northern District of Illinois, Eastern Division |
| Chicago, Illinois  60601 | | 219 South Dearborn Street |
| | | Chicago, Illinois 60604 |

# EXHIBIT B

F I L E D

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NOV  7 2007

NOV 7 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| VINCENT SADLER,<br>   Plaintiff, | )<br>)<br>) | CASE NO. 07C-5464 |
| | ) | |
| vs. | )<br>) | Judge Andersen |
| | ) | Magistrate Judge Mason |
| NASSER BASHIRI and<br>NANCY BASHIRI, husband and wife,<br>   Defendants. | )<br>)<br>)<br>) | |

## DEFENDANTS' FIRST AMENDED COUNTER COMPLAINT AGAINST PLAINTIFF VINCENT SADLER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Nasser Bashiri and Nancy Bashiri, the defendants, who file this their First Amended Counter Complaint against Plaintiff Vincent Sadler.

STATEMENT OF FACTS

1. Vincent Sadler and Nasser Bashiri agreed to purchase investment real estate.

   a) Defendant performed the terms of the agreement as follows:

   b) He paid the plaintiff $37,000.

   c) He then paid the plaintiff $10,000 and $6,000.

2. The defendant then had purchase contracts prepared which were then signed by the defendant and sent to the Plaintiff for his signature according to the agreement.

3. Plaintiff failed to perform the terms of the agreement as follows:

   a) Plaintiff failed to purchase specific real property as the parties had

1

agreed. Plaintiff did this by, among other things, intentionally failing to furnish paperwork to the defendant so that the defendant would be given time to obtain financing for the purchase of the real property in accordance with the terms of the agreement.

b) Plaintiff further attempted to extort additional monies from the defendant, above and beyond what was required by the agreement, by refusing to sign purchase agreements unless the sale prices were different than what had previously been agreed.

c) Plaintiff then falsely claimed that the defendant was in breach of the parties original agreement/contract, knowing full well that defendant was not, in order to falsely escape his own (i.e., the plaintiff's) obligations under the contractual agreement. Despite the plaintiff's actions, the defendant continued to fulfill his obligations under the contract but the plaintiff refused to add the defendant's name to the title of the subject real properties.

d) Plaintiff further refused to pay the defendant any of the rent money that plaintiff had been receiving from these investment properties, either directly or as a credit against the defendant's continuing payments of the subject property expenses.

e) The plaintiff further failed to form a corporation with the defendant as had been agreed. Instead, the plaintiff formed a corporation under his control exclusive of the defendant and put the various titles to the subject real property in the name of the plaintiff's corporation,

this in furtherance of the plaintiff's scheme to defraud and convert
the defendant's property to his own use and control with no
authority to do so, whether under the terms of the parties agreement
or otherwise.

4. As a direct, foreseeable, and proximate cause of the negligent and
intentional misconduct of the plaintiff, the defendant was compelled to
needlessly expend funds to reside in Phoenix, Arizona, which he would not
have had to do had the plaintiff not made  promises and representations
concerning the parties agreement that the plaintiff knew to be false, but
that the defendant relied upon to his financial detriment.

5. The defendant was compelled to spend substantial funds  out of his own
pocket to make sure that houses were completed, designs were selected,
warranty items were followed, property management companies selected,
etc.

6. Acting in reliance on the false promises made by the plaintiff, the
defendant was also compelled to renew all of the subject warranties
pertinent to the properties at issue.

7. Further acting in reliance on the false promises made by plaintiff, the
defendant incurred substantial expenses in traveling among the various
property sites located throughout the United States.

8. In summary, the Defendant did not receive any of the following in reference to the parties' agreement:

   a) Signed Purchase Contract for Back-O-Beyond properties;

   b) Signed Purchase Contract for La Barranca properties;

   c) Articles of Incorporation for the proposed corporation to be formed by the parties;

   d) $40,000 for 28677 San Lucas properties;

   e) $20,000 for Morphew Lane properties;

   f) Any funds for the 50% expenses that the Plaintiff was to pay on the 21911 N. 36th St. property (Aviano)

   g) Plaintiff did not reimburse the approximately $185,000 the defendant had paid towards the properties solely in the plaintiff's name.

9. The plaintiff, by not returning the purchase contracts for the lots, impacted the defendant financially, causing him to liquidate other assets and change direction.

10. By withholding the signed contracts immediately so that the defendant could obtain construction loans in 90 days, the plaintiff extorted 14 % interest.

11. The defendant paid the expenses involved with the lots from the time of their purchase.

12. The defendant is entitled to all monies paid towards the properties that remained in the plaintiff's name as well as 14% interest from the time of purchase through the date of judgment.

4

13. Defendant believes that the plaintiff never intended to enter into a
    partnership or corporation with the defendant, but was instead looking for
    a place to invest his money where he could receive interest, raising it at will
    and having the defendant pay for his properties while they appreciated,
    when he could then sell them and keep all the profit as the properties were
    solely in his name.

14. As a result of the above stated pertinent facts, the defendant is entitled to
    damages for conversion, fraud, defamation, and breach of contract caused
    by the plaintiff's actions as herein described. .

## FRAUD AND DECEIT

15. The defendant incorporates the remaining factual allegations of this
    counter complaint in this cause of action

16. The plaintiff purposely made false statements of fact and failed to inform
    defendant of facts that the plaintiff had a duty to reveal.

17. The defendant reasonably relied upon the misrepresentations of the
    plaintiff and has suffered damages as are described herein.

18. Additionally, the fraudulent actions of the plaintiff were intentional,
    malicious, reckless and/or were deliberately indifferent to the defendants'
    rights. Therefore, this plaintiff is liable to the defendants, each of them, for
    punitive damages to serve as a societal example and deterrent to such
    outrageous conduct.

5

## CONVERSION

19. The defendant incorporates the remaining factual allegations of this counter complaint in this cause of action

20. The plaintiff purposely made false statements of fact and failed to inform defendant of facts that the Plaintiff had a duty to reveal.

21. The defendant reasonably relied upon the misrepresentations of the plaintiff and has suffered damages as are described herein.

22. The plaintiff never had any intention of entering into any good faith business relationship with the defendant but instead made numerous false representations to the defendant never intended to fulfill those "promises", but the defendant suffered damages as a direct and proximate result of the plaintiff's misrepresentation of facts.

23. Additionally, the fraudulent actions of the plaintiff were intentional, malicious, reckless and/or were deliberately indifferent to the defendants' rights. Therefore, the plaintiff is liable to the defendants, each of them, for punitive damages to serve as a societal example and deterrent to such outrageous conduct.

## DEFAMATION OF CHARACTER

24. The defendant incorporates the remaining factual allegations of this counter complaint in this cause of action

25. The plaintiff purposely made false statements of false and inflammatory misstatements to third parties regarding the defendant and his business, with the sole intention to harm and damage the defendant's business and reputation without just cause.

6

26. As a result, the defendant has suffered severe and grievous damage to both his personal and business reputations, all for which sum the defendant prays judgment.

### BREACH OF CONTRACT

27. The defendant incorporates the remaining factual allegations of this counter complaint in this cause of action

28. The defendant pleads in the alternative to his tort claims that the defendant breached the contractual agreement between the parties.

29. The defendant requests a money damage for such brief, in addition to any equitable remedies that he may have available to him due to the actions of the plaintiff as herein described.

WHEREFORE, PREMISES CONSIDERED, defendant prays civil judgment against the plaintiff.


Respectfully submitted,

*Nasser Bashiri*
*Nancy Bashiri*
Nasser and Nancy Bashiri, Defendants
7222 East Gainey Ranch Road, Unit 238
Scottsdale AZ  85258
501  762-2525

## VERIFICATION

We, Nasser and Nancy Bashiri, declare and state as follows:

We are the named defendants in the above entitled and numbered cause.

All of the statements made in the DEFENDANTS' FIRST AMENDED COUNTER

COMPLAINT  AGAINST PLAINTIFF VINCENT SADLER are true and complete to

the best of our knowledge and belief.

We  make this declaration under penalty of perjury in Scottsdale, Arizona,

on the _6th_ day of _November_ , 2007.

Nasser and Nancy Bashiri, Declarants

8

## CERTIFICATE OF SERVICE

This to certify that on the ___6th___ day of November, 2007, a true and complete copy of the above and foregoing  DEFENDANTS' FIRST AMENDED COUNTER COMPLAINT AGAINST PLAINTIFF VINCENT SADLER was served on the opposing counsel by depositing in UPS overnight addressed as follows:

**Richard T. Reibman**
**Schwartz Cooper Chartered**
**180 North La Salle, Suite 2700**
**Chicago, IL  60601**
**Attorneys for Plaintiff**

_Nasser Bashiri_
_Nancy Bashiri_
**Nasser and Nancy Bashiri**

# EXHIBIT C

*F I L E D*

*DEC 14 2007*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VINCENT SADLER,<br>Plaintiff, | )<br>)<br>)    CASE NO. 07C-5464 |
| vs. | )<br>)    Judge Anderson<br>) |
| NASSER BASHIRI and<br>NANCY BASHIRI, husband and wife,<br>Defendants. | )    <u>Magistrate Judge Morton Denlow</u><br>)<br>)<br>) |

## DEFENDANTS' INITIAL STATUS REPORT

### 1. A BRIEF SUMMARY OF THE CLAIMS ASSERTED IN THE COMPLAINT AND ANY COUNTERCLAIM OR THIRD PARTY COMPLAINT.

<u>Plaintiff</u>: Plaintiff and Defendant had a dispute over investment properties they purchased. To resolve the dispute, they met over a 2 day period in October 2006 in the presence of five mediators and their bookkeeper. They settled their dispute in a signed, written agreement, which was witnessed by all present. Defendant partially performed under the terms of the Settlement Agreement and then breached. Plaintiff seeks to enforce the Settlement Agreement.

<u>Defendants</u>:    The Plaintiff's description of the circumstances underlying the present litigation is incomplete and misleading. Although the Plaintiff and the Defendant Nasser Bashiri formerly worked together purchasing and selling various real properties for investment purposes, agreement between the parties was reached in 2005. The following year (October 2006), the Plaintiff (Mr. Sadler) and both Defendants (Mr. and Mrs. Bashiri) were all members of the same church which happened to be located in the Chicago area. In an attempt to obtain the church's assistance in resolving any agreement they may have had, the parties sought the assistance of the church leadership and all concerned had a counseling session, but this was all in the context of a <u>church</u> ministry. To characterize the identity or the actions of these church leaders as "mediators" is misleading, as is the secular enforceability of any "agreement" made under these conditions. Plaintiff refers to a bookkeeper above and to a "sworn" and notarized transcript in his complaint, but again, this is nothing more than an

attempt, after the fact, to manipulate what actually occurred into creating a cause of action where one would otherwise not exist. To put it bluntly, and here referring to the facts that Plaintiff relies upon to support its case, Plaintiff is doing nothing more than dressing up a jackass to look like a horse, but there is no proverbial thoroughbred here. Moreover, the supposed "transcript" of the agreement between the parties, and indeed, the agreement itself, are simply not consistent. It was the Plaintiff himself that produced the key documents that it now relies upon, the contents of which were not known to the Defendant at the time the subject document was signed. Finally, even assuming for the sake of argument the validity and legal enforceability of the so-called agreement, the Defendants vigorously reject any notion that the "Defendant partially performed under the terms of the Settlement Agreement and then breached." In fact, the Defendants will show that it has been the Plaintiff that violated any agreement that the parties may have had.

Plaintiff: In addition to this case, the court should be aware that on November 21, 2007, Defendant filed a separate complaint in the U.S. District Court in Arizona, seeking unspecified damages against Plaintiff and Plaintiff's attorneys. According to Defendant, he was damaged when, after the instant case was filed, Plaintiff recorded notice of the filing of this case with the recorders offices in the counties where the subject properties are located. It is unknown at this time whether the Arizona action will be joined with this action.

Defendants: First, the Plaintiff's lawsuit involves six separate real properties, none of which are located in this district, in the State of Illinois, or even in this Circuit. Given that at the time of filing the Defendants were (and still are) not residents of this district (they reside in Arizona), the only connection to this district alleged in the Complaint is the allegation that the so-called "Settlement Agreement" happened to have been made at the parties' Chicago church. Several of the subject properties are located in the State of Arizona, the contract being challenged (here speaking of the original agreement prior to the church meeting) was not made in this district, and the Defendants did not live in this district at the time of filing. Plaintiff claims that it has "witnesses" in Illinois, but Plaintiff is only referring to the parties' fellow church members whose testimony may not be substantially material, to say the least. On the other hand, all of these same indicators favor the conclusion that this case was filed in the wrong district - it should have been filed in Arizona where a substantial portion of the subject real property is located, where all of the relevant witnesses are located, and where the Defendants reside. As the Court

2

is aware, the Defendants' motion to dismiss, or alternatively to transfer this case to a more convenient forum, is presently pending. Of course the Court's disposition of that motion is an important present consideration because a ruling for the Defendants would effectively moot the present proceedings before this Court should the case be dismissed or transferred.

Second, as referenced by the Plaintiff's statement in the Initial Status Report, the Defendants have indeed filed a lawsuit in the Arizona District Court. Plaintiff states, "According to Defendant, [Defendant] was damaged when, after the instant case was filed, Plaintiff recorded notice of the filing of this case with the recorders offices in the counties where the subject properties are located." Plaintiff's counsel feigns astonishment that he would be included in the Arizona lawsuit when all he did was to file a notice of lis pendens where the subject properties are located. What counsel does not mention is that the Plaintiff's Complaint in Illinois does not allege any interest of the Plaintiff in the title to the real property on which it has filed a notice of list pendens. Defendants attached a copy of that lawsuit to the Defendants' motion to dismiss/transfer venue, and it is apparent from the most casual reading of that Arizona complaint that Plaintiff's present characterization of that lawsuit is again misleading. Either by negligence or intentional design, Plaintiff's counsel filed notices of lis pendens against several specific pieces of real property when plaintiff's counsel knew, or should have known, that the Plaintiff's present lawsuit in this district did not affect any claim of right , title, or interest in those properties. Specifically, Mr. Sadler's Complaint does not request specific performance but only money damages as to four of the six items of real property involved in the Illinois lawsuit. Accordingly, the Illinois lawsuit does not affect the title to the real property concerning the remaining four properties upon whom the Plaintiff's counsel placed a notice of lis pendens. Both Plaintiff's counsel individually and the Plaintiff have been sued in that case that alleges slander of title, action to quiet title, and tortious interference with contractual relations. In addition, the Defendants have filed a pendent claim against Plaintiff's counsel individually for statutory liability pursuant to an Arizona law prohibiting the filing of a groundless document affecting the title to real property. These are substantial claims against both the Plaintiff and his attorneys individually, and counsel is only now presently attempting to minimize the perception of their individual culpability by failing to state pertinent facts. These attorneys are personally involved in the facts of this case as co-defendants, and that is inconsistent with their ethical obligations as a trial advocate.

3

> "An attorney violates his or her ethical obligations by knowingly recording a wrongful lis pendens. In re Bowen, 160 Ariz. 558, 561, 774 P.2d 1348, 1351 (1989) . . . The legislature has also recognized the importance of protecting property owners from persons who knowingly claim a false 'interest in, or a lien or encumbrance against real property.' *See* A.R.S. § 33-420(A). The statute imposes civil and criminal penalties on a person 'who causes a document asserting such claim to be recorded or filed.' *Id.* This provision includes filing a groundless lis pendens notice. Richely v. Western Pac. Dev. Corp., 140 Ariz. 597, 684 P.2d 169 (Ct.App.1984)."

Despite counsel's attempts to trivialize his own involvement, there is ample legal precedent to hold all concerned accountable, including Plaintiff's present counsel.

## 2. A BRIEF STATEMENT OF THE RELIEF SOUGHT, INCLUDING AN ITEMIZATION OF DAMAGES.

<u>Plaintiff</u>: Plaintiff seeks an order compelling Defendant to execute and deliver quit claim deeds to two properties. In addition, Plaintiff seeks $324,837.52 as of December 31, 2007, in money damages arising out of fixed amounts owed by Defendant as well as interest required to be paid under the Settlement Agreement.

<u>Defendants</u>: Aside from the specific relief presently requested in the case already filed in the Arizona District Court, the defendants seek an order of the Court invalidating any purported agreement related to the church meeting referred to in the Plaintiff's complaint as a "mediation agreement". The Defendants also request contractual damages relating to the breach of the parties 2005 (not 2006) agreement, the specific amount of actual damages which cannot be precisely determined at this time given unresolved pending discovery and given the unresolved nature of the issues raised by the case pending in Arizona. Interestingly, the Plaintiff in its statement admits that he seeks an order compelling specific performance for only two real properties, neither of which is the subject of the Defendants' Arizona Complaint. This is an effective admission by Plaintiff that the Defendants' Complaint is not frivolous given that Plaintiff's counsel filed multiple notices of lis pendens that were not subject to the Illinois lawsuit on which they were purportedly based because Plaintiff did not challenge the right, title to or interest in that property.

## 3. A BRIEF DESCRIPTION OF THE MATTER REFERRED TO THE MAGISTRATE JUDGE OR ALTERNATIVELY, ATTACH A COPY OF THE REFERRAL ORDER.

It is the understanding of the Defendants that the Plaintiff's Initial Status Report includes the referral order.

### 4. THE STATUS OF ANY BRIEFING ON THE MATTERS REFERRED.

A.    Defendants' Motion to Dismiss or, in the Alternative, to Transfer the Case to Another District was filed on November 26, 2007. The Court has previously indicated that it will hear this motion on the submitted papers. The Plaintiff has not filed a response to the Defendants' motion.

B.    If the Plaintiff is to file a Motion for Summary Judgment, it is required to be filed by 12/21/07.

### 5. WHETHER THE PARTIES WILL CONSENT TO TRIAL BEFORE A MAGISTRATE JUDGE.

Plaintiff:  [Plaintiff did not indicate on the Initial Status Report whether he would or would not consent to a trial before the magistrate judge.]

Defendants:  If Judge Denlow is going to be the magistrate judge, the Defendants agree to have the case heard by him.

### 6. THE STATUS OF SETTLEMENT NEGOTIATIONS, IF ANY. AT LEAST 14 DAYS PRIOR TO THE INITIAL STATUS CONFERENCE THE PLAINTIFF IS DIRECTED TO SUBMIT AN ITEMIZATION OF DAMAGES AND A WRITTEN SETTLEMENT DEMAND TO THE DEFENDANT. AT LEAST 7 DAYS PRIOR TO THE INITIAL STATUS CONFERENCE, DEFENDANT IS TO RESPOND IN WRITING TO THE PLAINTIFF'S SETTLEMENT DEMAND.

Plaintiff:  Prior to filing this action, Plaintiff and Defendant Nasser Bashiri discussed settlement, but were unsuccessful in resolving the case. Plaintiff has made a written settlement demand upon Defendants.

Defendants:  Counsel is mistaken. Plaintiff sent a one page document regarding "Itemization of Relief Sought and Damages" and "Settlement Demand". However, that document is nothing more than an itemization of the damages as alleged in the Plaintiff's Complaint. It was certainly not a good faith offer to resolve the differences of the parties. The Defendants doubt there ever will be any good faith settlement negotiations with the Plaintiff's counsel because counsel has already personally implicated

5

himself into this case as a party defendant. Defendants believe that his continued appearance as an advocate will interfere with the due course that this litigation would otherwise track.

Respectfully submitted,

Nasser Bashiri

Nancy Bashiri

Nasser and Nancy Bashiri, Defendants
7222 East Gainey Ranch Road, Unit 238
Scottsdale AZ 85258
(501) 762-2525

6

## CERTIFICATE OF SERVICE

This to certify that on the <u>13th</u> day of December 2007, a true and complete copy of the above and foregoing **DEFENDANT'S INITIAL STATUS REPORT** was served on the opposing counsel by overnight UPS addressed as follows:

Richard T. Reibman
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL  60601
Attorneys for Plaintiff

Nasser and Nancy Bashiri
7222 E. Gainey Ranch Rd.
Unit 238
Scottsdale, AZ  85258

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

VINCENT SADLER,                              )
                                             )
    Plaintiff and Counter-Defendant,     )
                                             )
v.                                           )  No. 07 C 5464
                                             )
NASSER BASHIRI and NANCY                     )
BASHIRI, husband and wife                    )
                                             )
    Defendants and Counter-Plaintiffs.   )

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

1.     Plaintiff is an individual who resides in, and is a citizen of, the State of Illinois. (Complaint, ¶1; Declaration of Vincent Sadler[1], ¶1).

2.     Defendant Nasser Bashiri is an individual who resides in, and is a citizen of, the State of Arizona. Defendant Nancy Bashiri is an individual who resides in, and is a citizen of, the State of Arizona. The Defendants are married. (Amended Answer, ¶2; Complaint, ¶2; Sadler Decl., ¶10).

3.     Defendant Nancy Bashiri is a nominal defendant in this action because Arizona is a community property state, and the community property of their marriage may be subject to the claims stated herein. (In this pleading, use of the term "Defendant" refers only to Nasser Bashiri, unless otherwise stated). (Complaint, ¶2).

4.     The amount in controversy exceeds $75,000 exclusive of interest and costs. (Complaint, ¶3; Declaration of Debra MacDonald[2], ¶¶10-15; Sadler Decl., ¶¶27 - 43).

5.     Jurisdiction is appropriate because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states.(Complaint, ¶4).

6.     Venue is appropriate in the Northern District of Illinois because a substantial portion of the events giving rise to the claims occurred within the Northern District of Illinois. Among other things, (a) when the Plaintiff and Defendant commenced their business

---

[1] Hereinafter, "Sadler Decl., ¶_____"

[2] Hereinafter, "MacDonald Decl., ¶_____"

relationship, Plaintiff was a resident of Chicago, Illinois and Defendant was a resident of Northbrook, Illinois (Defendant is currently a resident of Arizona), (b) the mediation described below occurred in Chicago, Illinois, (c) the five mediators present, all of whom are witnesses, reside in the Chicago, Illinois metropolitan area, and (d) the settlement agreement described below was executed by the parties in Chicago, Illinois and witnessed by the mediators in Chicago, Illinois. (Complaint, ¶4; Declaration of Alex Aldridge[3], ¶¶1, 2 & 6; Sadler Decl., ¶¶10 & 16; and Declaration of Rudy Zarate[4], ¶¶1, 2 & 6).

7.  In early 2005, Plaintiff and Defendant agreed to purchase properties together. (Sadler Decl., ¶3).

8.  Certain properties were subsequently acquired. (Sadler Decl., ¶4).

9.  By mid-July 2006, Plaintiff and Defendant were in an ongoing dispute over the properties. Among other things, they disputed how the various properties that had been acquired should be disposed or divided or otherwise treated. Their relationship became strained to the point that they could not get along as co-investors. (Sadler Decl., ¶5).

10.  They agreed to attempt to settle our dispute by meeting in person and discussing their differences. To promote settlement efforts, they agreed that they would have five people from their church attend the mediation and assist them in finding a peaceful resolution. (Sadler Decl., ¶6).

11.  On October 4-5, 2006, Plaintiff and Defendant met in person in Chicago, Illinois. (Aldridge Decl., ¶2; Joint Declaration of T.J. Bullock, Antoine Holmes and Duraid Micah[5], ¶2; MacDonald Decl., ¶5; Sadler Decl., ¶10; Zarate Decl., ¶2).

12.  The sole subject matter of the mediation was to attempt resolution of the dispute between Plaintiff and Defendant concerning the real estate investment properties that had been acquired. (Aldridge Decl., ¶3; Joint Decl., ¶3; Sadler Decl., ¶11; Zarate Decl., ¶3).

13.  The investment properties are in Florida, Arizona, and Arkansas. See Sadler Decl., Ex. A. (The Arkansas properties are not germane to this proceeding).

---

[3] Hereinafter, "Aldridge Decl., ¶____"

[4] Hereinafter, "Zarate Decl., ¶____"

[5] Hereinafter, "Joint Decl., ¶____"

14.    Also present at the October 4-5, 2006 meetings were five mediators, namely Alex Aldridge, T.J. Bullock, Antoine Holmes, Duraid Micah and Rudy Zarate. All of the mediators are Chicago residents. (Aldridge Decl., ¶¶1 & 2; Joint Decl., ¶¶1 & 2; Zarate Decl., ¶¶1 & 2).

15.    The parties are members of the same church. The five mediators are also members of the same church, and all were mutually agreeable to the parties. (Sadler Decl., ¶7; Aldridge Decl., ¶4; Joint Decl., ¶4; and Zarate Decl., ¶4).

16.    There was no religious content to the mediation. No issue inside the mediation process was controlled or governed by any church procedures or process. (Aldridge Decl., ¶4; Joint Decl., ¶4; Sadler Decl., ¶8; Zarate Decl., ¶4).

17.    The five mediators have never said or implied (and do not claim) that they had any "power" to decide how the dispute between Plaintiff and Defendant should be resolved. Their purpose was solely to aid Plaintiff and Defendant to a peaceful solution and agreement. (Aldridge Decl., ¶5; Joint Decl., ¶5; Sadler Decl., ¶9; Zarate Decl., ¶5).

18.    Also present at the mediation was Debra MacDonald, who kept the books and records for the real estate properties that were the subject of the dispute between the parties. (MacDonald Decl., ¶5; Sadler Decl., ¶12).

19.    At the conclusion of the first day of mediation, October 4, 2006, Plaintiff and Defendant reached preliminary agreement. One of the mediators, Antoine Holmes, typed up the understanding of the parties and everyone agreed to return the next day for the purpose of fine-tuning the written agreement and confirming that it accurately set forth what had been agreed upon during the mediation. (Aldridge Decl., ¶6; Joint Decl., ¶6; Sadler Decl., ¶14; Zarate Decl., ¶6).

20.    Plaintiff, Defendant, and the five mediators all re-convened on October 5, 2006. They reviewed and discussed the written settlement agreement ("Settlement Agreement") confirming the settlement terms. The terms were finalized. (Aldridge Decl., ¶6; Joint Decl., ¶6; Sadler Decl., ¶15; Zarate Decl., ¶6).

21.    When the Settlement Agreement was finalized, Plaintiff and Defendant signed it. Then the five mediators signed as witnesses. (Aldridge Decl., ¶6; Joint Decl., ¶6; MacDonald Decl., ¶6; Sadler Decl., ¶16; Zarate Decl., ¶6).

22.    A true and correct copy of the Settlement Agreement is attached to the Sadler Declaration as Exhibit A.

23.    The introductory paragraph of the Settlement Agreement provides, "Below are the agreed upon conditions regarding properties located in...Arizona and Florida...The following conditions were agreed on October 5, 2006." (Sadler Decl., Ex. B, Lines 1-3).

24.    The Settlement Agreement imposed obligations on both parties. (Sadler Decl., ¶19).

25.    Immediately after the Settlement Agreement was signed, Defendant was obligated to pay certain monies to Defendant. This included (a) $37,652.59 (to cure delinquent payments), (b) $10,594.31 (the first payment due under the Settlement Agreement), and (c) $6,000.00 (to reimburse Plaintiff for deposits he had made on properties in Arizona that the parties commonly refer to units J4 and J6). These were not the only payments Defendant was required to make to Plaintiff; they were the initial payments. (Answer to Counter Complaint, ¶1; MacDonald Decl., ¶7; Sadler Decl., ¶20).

26.    He paid these amounts after the Settlement Agreement was executed. In addition, Defendant had other obligations to Plaintiff under the Settlement Agreement, including (but not limited to) delivery of deeds to two properties. (Answer to Counter Complaint, ¶1; MacDonald Decl. ¶7; Sadler Decl., ¶20).

27.    Plaintiff also had obligations under the Settlement Agreement. He assembled the various documentation and funds due from him to Defendant under the Settlement Agreement. (Aldridge Decl., ¶10; Sadler Decl., ¶¶19 & 22; Zarate Decl., ¶10).

28.    Plaintiff delivered the documentation and funds to Rudy Zarate, one of the mediators. His deliveries were complete. (Aldridge Decl., ¶10; Sadler Decl., ¶23; Zarate Decl., ¶10).

29.    Two of the mediators, Rudy Zarate and Alex Aldridge, then phoned Defendant in a three-way call on November 29, 2006. They told Defendant that Plaintiff had delivered the documents and funds he was required to deliver under the Settlement Agreement. In that call, Defendant stated that he would not accept the deliveries as he had decided not to honor his obligations in the Settlement Agreement. (Zarate Decl., ¶10; Aldridge Decl., ¶10)

30.    To this day, Plaintiff remains ready, willing and able to perform his obligations under the Settlement Agreement, but Defendant continues to refuse to accept performance. (Sadler Decl., ¶25).

31.    Defendant is the owner of record of 28677 San Lucas Lane, Bonita Springs, Florida. Under the Settlement Agreement, Defendant was required to convey title via quit-claim deed to Plaintiff. The Settlement Agreement specifically provides: "NB agrees to 'quit claim' the property into VS name and each party will pay their own cost to [sic] related to this transaction (any damages cause by current renters will be absorbed by NB). [VS] agrees to pay NB $40k for property." Defendant has never quit-claimed the property to Plaintiff. (Complaint, ¶¶18, 19 & 20; Sadler Decl., ¶27).

32.    Plaintiff and Defendant are co-owners of record of 14630 Meravi Drive, Bonita Springs, Florida. Under the Settlement Agreement, Defendant was required to convey title of his interest via quit-claim deed to Plaintiff. The Settlement Agreement specifically provides: "Meravi Dr.—NB will quit claim his interest in this property to VS; VS will then have sole possession of Meravi Dr." Defendant has never quit-claimed the property to Plaintiff. (Complaint, ¶¶22-24; Sadler Decl., ¶28).

33.    Defendant is the owner of record of 21911 N. 36 St., Phoenix, Arizona in the Aviano Desert Ridge development ("Aviano"). Plaintiff paid the down payment of $51,271.00 when Aviano was acquired. Under the terms of the Settlement Agreement, the parties were supposed to sell Aviano and split the proceeds equally. In addition, Defendant was obligated to pay Plaintiff: (a) $25,635.00 (representing half of the down payment); (b) interest on the down payment at the prime rate from October 6, 2006 to March 1, 2007; and (c) interest on the down payment at the rate of 14% from March 1, 2007 until paid in full or sold. The Settlement Agreement specifically provides: "[NB] Agrees to return deposit of $25,635 (Aviano) – NB will pay monthly payments of prime until March 1, 2007 at which time the rate goes to 14% until the balance is paid in full." (Complaint, ¶27; MacDonald Decl., ¶10; Sadler Decl., ¶29).

34.    On and prior to January 14, 2007, Defendant stated that he wanted to reside at Aviano. He said that if it was agreeable to Plaintiff, Defendant would pay Plaintiff the entire down payment of $51,271.00 rather than half of the down payment as set forth in the Settlement Agreement. Plaintiff agreed. Defendant moved into Aviano but never returned the down payment. (Complaint, ¶¶27 & 28; Sadler Decl., ¶30).

35.    Relative to Aviano, Defendant has not made any payments for interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $6,537.44 and continues to

accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $19.66. (MacDonald Decl., ¶10; Sadler Decl., ¶31).

36.     Plaintiff is the owner of record of 150 Scenic Drive, Sedona, Arizona in the Back O'Beyond development ("BOB"). Under the Settlement Agreement, Defendant was obligated to purchase BOB from Plaintiff for the original price of $575,836.75 plus $50,000.00. (Complaint, ¶31; Aldridge Decl., ¶9; Joint Decl., ¶9; MacDonald Decl., ¶11; Sadler Decl., ¶32; Zarate Decl., ¶9).

37.     Until Defendant purchases BOB from Plaintiff, Defendant is required to pay Plaintiff interest on $575,836.75 at: (a) the "prime rate" from October 6, 2006 through January 3, 2007 and (b) the fixed rate of 14% thereafter. The Settlement Agreement specifically provides: "[NB] Agrees to pay VS 50k for 'BOB'" and that [VS] agrees to charge NB interest rate of prime for 'BOB'...until NB finances BOB...if not financed within 90 days NB will have to pay interest at rate of 14%." (Complaint, ¶31; Aldridge Decl., ¶9; Sadler Decl., ¶33; Zarate Decl., ¶9).

38.     Defendant never purchased BOB from Plaintiff and has not made any payments for interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $83,834.75 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $218.63. (MacDonald Decl., ¶11; Sadler Decl., ¶34).

39.     Plaintiff is the owner of record of 15 Granite Mountain Road, Sedona, Arizona, ("La Barranca"). Under the Settlement Agreement, Defendant is obligated to purchase La Barranca from Plaintiff for the original price of $348,267.54. (Complaint, ¶35; Aldridge Decl., ¶8; Sadler Decl., ¶35; Zarate Decl., ¶8).

40.     Until Defendant purchases La Barranca from Plaintiff, Defendant is required to pay Plaintiff interest on $348,267.54 at: (a) the "prime rate" from October 6, 2006 through January 3, 2007 and (b) the fixed rate of 14% thereafter. The Settlement Agreement specifically provides: "[VS] Agrees to charge NB interest rate of prime for ...15 Granite Rd. until NB finances...15 Granite [sic] if not financed within 90 days NB will have to pay interest at rate of 14%." (Complaint, ¶35; Aldridge Decl., ¶8; Sadler Decl., ¶36; Zarate Decl., ¶8).

41.     Defendant never purchased La Barranca from Plaintiff and has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is

$51,299.15 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $133.86. (MacDonald Decl., ¶12; Sadler Decl., ¶37).

42.    Plaintiff is the owner of record of 28658 San Lucas Lane, Bonita Springs, Florida. Under the Settlement Agreement, Defendant was obligated to purchase 28658 San Lucas Lane from Plaintiff for the original price of $498,968.00. (Complaint, ¶39; Aldridge Decl., ¶7; Joint Decl., ¶7; Sadler Decl., ¶38; Zarate Decl., ¶7).

43.    Until Defendant purchases 28658 San Lucas Lane from Plaintiff, Defendant is required to pay Plaintiff interest on $498,968.00 at: (a) the "prime rate" from November 1, 2006 through January 31, 2007 and (b) the fixed rate of 14% thereafter. The Settlement Agreement specifically provides: "Palmira-28658, NB will be refinancing this property in his name by March 1, 2007, until he receive [sic] financing he will pay VS interest at the rate of prime for November 2006-January 2007; if not finance [sic] by February 1, 2007 interest rate goes to 14%". (Complaint, ¶39; Aldridge Decl., ¶7; Joint Decl., ¶7; Sadler Decl., ¶39; Zarate Decl., ¶7).

44.    Defendant never purchased 28658 San Lucas Lane from Plaintiff and has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $70,913.30 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $191.38. (MacDonald Decl., ¶13; Sadler Decl., ¶40).

45.    Defendant is the owner of record of 9213 Quartz Lane, Unit 101, Naples, Florida, ("Quartz Cove"). Plaintiff paid the down payment of $56,600.00 when the property was acquired. Under the terms of the Settlement Agreement, Defendant was obligated to pay Plaintiff: (a) interest on the down payment at the prime rate from October 6, 2006 to March 1, 2007; and (c) interest on the down payment at the rate of 14% from March 1, 2007 until time of reimbursement. The Settlement Agreement specifically provides: "[NB] Agrees to pay $56,600 to VS for deposit of Quartz Cove[;] NB will pay monthly payments of prime until March 1, 2007 at which time the rate goes to 14% until the balance is paid in full." (Complaint, ¶43; MacDonald Decl., ¶14; Sadler Decl., ¶41).

46.    Relative to Quartz Cove, Defendant never reimbursed Plaintiff for the down payment of $56,600.00. Plaintiff has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $7,794.64 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $21.71. (MacDonald Decl., ¶14; Sadler Decl., ¶42).

47.    Defendant is the owner of record of 10285 Heritage Bay Blvd., Unit 834, Naples, Florida, ("Heritage Bay"). Plaintiff paid the down payment of $40,787.00 when the property was acquired. Under the terms of the Settlement Agreement, Defendant was obligated to pay Plaintiff: (a) interest on the down payment at the prime rate from October 6, 2006 to March 1, 2007; and (c) interest on the down payment at the rate of 14% from March 1, 2007 until such time as Defendant reimburses Plaintiff for the down payment. The Settlement Agreement specifically provides: "Heritage Bay...NB will pay VS $40,787 for deposit/down payment [;] NB will pay monthly payments of prime until March 1, 2007 at which time the rate goes to 14% until the balance is paid in full." (Complaint, ¶47; MacDonald Decl., ¶15; Sadler Decl., ¶43).

48.    Relative to Heritage Bay, Defendant never reimbursed Plaintiff the down payment of $40,787.00. Plaintiff has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $5,615.54 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $15.64. (MacDonald Decl., ¶15; Sadler Decl., ¶44).

49.    The Settlement Agreement imposed no obligations on either party to pay a share of the rents to each other. (MacDonald Decl., ¶9; Sadler Decl., ¶24).

50.    Plaintiff did not make any false statements of fact to Defendant and never failed to inform Defendant of facts that he had a duty to reveal. (Sadler Decl., ¶46).

51.    Plaintiff never misappropriated, converted or concealed any monies that were the property of Defendant. (Sadler Decl., ¶47).

52.    None of the parties' properties were ever deeded into any corporation or other entity. (Sadler Decl., ¶21).

Dated: December 19, 2007                    Respectfully submitted,

                                            **VINCENT SADLER**

                                            By:  /s/ Richard T. Reibman
                                                  One of his Attorneys

Patrick T. Stanton (ARDC #6216899)
Richard T. Reibman (ARDC#3122849)
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL  60601
(312) 346-1300

**Responses and Replies**
1:07-cv-05464 Sadler v. Bashiri et al

# United States District Court

## Northern District of Illinois - CM/ECF LIVE, Ver 3.0

### Notice of Electronic Filing

The following transaction was entered by Reibman, Richard on 12/19/2007 at 3:08 PM CST and filed on 12/19/2007
**Case Name:**          Sadler v. Bashiri et al
**Case Number:**        1:07-cv-5464
**Filer:**              Vincent Sadler
**Document Number:** 33

**Docket Text:**
RULE 56.1(a)(3) Statement by Vincent Sadler regarding motion for summary judgment[31] (Reibman, Richard)

### 1:07-cv-5464 Notice has been electronically mailed to:

Richard T. Reibman    rreibman@scgk.com, sdzyacky@scgk.com

Patrick Thomas Stanton    pstanton@scgk.com

### 1:07-cv-5464 Notice has been delivered by other means to:

Nancy Bashiri
7222 E. Gainey Ranch Road
Unit 238
Scottsdale, AZ 85258

Nasser Bashiri
7222 E. Gainey Ranch Rd
Unit 238
Scottsdale, AZ 85258

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=12/19/2007] [FileNumber=4293483-
0] [2473417d20a781242328148329bb262b53150e30aeac0fd308aca7a28e140a1cd0
6b18244402df8d53453cc229f801d9b595630f211305e01c30ae15045f49de]]

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VINCENT SADLER, | ) |
| | ) |
| Plaintiff and Counter-Defendant, | ) |
| | ) |
| v. | ) No. 07 C 5464 |
| | ) |
| NASSER BASHIRI and NANCY | ) |
| BASHIRI, husband and wife | ) |
| | ) |
| Defendants and Counter-Plaintiffs. | ) |

## DECLARATION OF DEBRA MACDONALD

Debra MacDonald declares as follows:

1.    I have personal knowledge of the matters set forth in this Declaration. I am over 21 years of age and am competent to testify at trial regarding these matters. I reside in Glencoe, Illinois.

2.    For many years, I have used Excel and Word software programs and have experience in minor bookkeeping, typing, filing, and similar administrative tasks. In April 2005, I was asked by Vincent Sadler (the "Plaintiff") and Nasser Bashiri ("Defendant") to handle some simple office responsibilities for them, such as phone calls, typing and faxing. But as the Plaintiff's and Defendants' relationship continued, it became my responsibility to handle all the office responsibilities, such as sending monthly statements of payments due from the Plaintiff and Defendant. I was one responsible for processing payments to lenders, insurance companies, condominium association dues, utility bills, pest control, etc., along with keeping monthly records of such payments along with filing. I was essentially the point person for all their real estate dealings. I generated and distributed numerous reconciliations and correspondence to the Plaintiff and Defendant as requested or needed.

3.    Intentionally deleted.

4.    The Plaintiff and Defendant made monthly payments and shared expenses equally until July 2006 (this relates only to the on-going monthly payments, not to downpayments on property, which were not equally made). In July 2006, Defendant stopped paying his share of monthly expenses. I made several phone calls encouraging the Defendant to make his monthly

payment with no response. The relationship between the Plaintiff and Defendant became strained.

5.    On October 4, and October 5, 2006 the Plaintiff and Defendant met in Chicago to try to resolve their dispute over the properties. I was present at both of these meetings. The Defendant was residing in Arkansas at the time and drove to Chicago to attend these meetings.

6.    I was present when Plaintiff and Defendant signed the written settlement agreement (the "Settlement Agreement") on October 5, 2006. I was given a copy of it and I was asked to continue to aid the Plaintiff and Defendant with any office work to help them fulfill the terms of the Settlement Agreement.

7.    Following execution of their Settlement Agreement on October 5, 2006, Defendant paid Plaintiff (a) $37,652.59 (to cure delinquent interest payments), (b) $10,594.31 (the first payment due under the Settlement Agreement), and (c) $6,000.00 (to reimburse Plaintiff for deposits he had made on properties in Arkansas that the parties commonly refer to units J4 and J6). These were not the only payments Defendant was required to make to Plaintiff; they were the initial payments. Defendant was also obligated under the Settlement Agreement to deliver quit claim deed to Plaintiff of the properties, namely 28677 San Lucas Lane, Bonita Springs, Florida and 14630 Meravi Drive, Bonita Springs, Florida.

8.    Defendant never made any further payments required by the Settlement Agreement.

9.    The Settlement Agreement imposed no obligations on either party to pay a share of the rents to each other.

10.    Relative to the property located at 21911 N. 36 St., Phoenix, Arizona in the Aviano Desert Ridge development ("Aviano"), Plaintiff paid the down payment of $51,271.00 when Aviano was acquired. Defendant has not reimbursed the Plaintiff for all or any part of the downpayment. In addition, Defendant has not made any payments for interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $6,537.44 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $19.66.

11.    Relative to the property located at 150 Scenic Drive, Sedona, Arizona in the Back O'Beyond development ("BOB"), Defendant has not made any payments for interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $83,834.75 and continues to

accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $218.63.

12.      Relative to the property located at 15 Granite Mountain Road, Sedona, Arizona, ("La Barranca"), Defendant has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $51,299.15 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $133.86.

13.      Relative to the property located at 28658 San Lucas Lane, Bonita Springs, Florida, Defendant has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $70,913.30 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $191.38.

14.      Relative to the property located at 9213 Quartz Lane, Unit 101, Naples, Florida, ("Quartz Cove"), Plaintiff paid the down payment of $56,600.00 when the property was acquired. Defendant has never reimbursed Plaintiff for all or any part of the down payment of $56,600.00. Defendant has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $7,794.64 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $21.71.

15.      Relative to the property located at 10285 Heritage Bay Blvd., Unit 834, Naples, Florida, ("Heritage Bay"), Plaintiff paid the down payment of $40,787.00 when the property was acquired. Defendant has never reimbursed Plaintiff for all or any part of the down payment of $40,787.00. Defendant has not made any payments on interest accruing after November 30, 2006. Interest due as of December 31, 2007 is $5,615.54 and continues to accrue from and after January 1, 2008 through the date of judgment at the per diem rate of $15.64.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 17th day of December , 2007.

**DEBRA MACDONALD**

**Other Documents**
1:07-cv-05464 Sadler v. Bashiri et al

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 3.0

### Notice of Electronic Filing

The following transaction was entered by Reibman, Richard on 12/19/2007 at 3:21 PM CST and filed on 12/19/2007
**Case Name:**       Sadler v. Bashiri et al
**Case Number:**     1:07-cv-5464
**Filer:**           Vincent Sadler
**Document Number:** 38

**Docket Text:**
DECLARATION of Debra MacDonald regarding motion for summary judgment[31] by Vincent Sadler (Reibman, Richard)

### 1:07-cv-5464 Notice has been electronically mailed to:

Richard T. Reibman    rreibman@scgk.com, sdzyacky@scgk.com

Patrick Thomas Stanton    pstanton@scgk.com

### 1:   cv-5464 Notice has been delivered by other means to:

Nancy Bashiri
7222 E. Gainey Ranch Road
Unit 238
Scottsdale, AZ 85258

Nasser Bashiri
7222 E. Gainey Ranch Rd
Unit 238
Scottsdale, AZ 85258

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=12/19/2007] [FileNumber=4293659-
0] [98dcdf5ddf223153b362cc723e27eb655de7c7e10e2e693f13fd83f8b00419079b
b22dad718419c7963f7787ad8b0d835aa847ae23fd9e05d4fd206b5b79f8af]]

# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

VINCENT SADLER,                            )        CASE NO. 07C-5464
    Plaintiff,                         )
                                       )
vs.                                        )
                                       )
NASSER BASHIRI and                         )
NANCY BASHIRI, husband and wife,           )
    Defendants.                        )
                                       )

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO PLAINTFF'S MOTION TO DISMISS AND REQUEST FOR HEARING

      Pending before the Court is the defendants' Motion to Dismiss, or in the Alternative, to Transfer the Case to Another District [referred to more simply as the defendants' Motion to Dismiss}.  The plaintiff has filed a response to that motion, and the defendants now file their reply to that motion as permitted by the Court and the Federal Rules of Civil Procedure.

      A thorough reading of both the plaintiff's responsive argument and the cases cited to in that response reveal no small amount of confusion and misunderstanding as to both the facts and law pertinent to the defendant's present motion.  First of all, the plaintiff appears to have confused the two distinct issues raised by the defendants" motion, namely the motion for dismissal based on a lack of venue is NOT the same as the defendants' alternative motion to transfer the case based on *forum non conveniens.*  The two issues involve different facts, case law, and most importantly different burdens of persuasion.  Secondly, it appears from a thorough reading of the case law cited by the plaintiff in its response that the plaintiff has not read the actual cases, but has instead chosen to cut and paste a series of headnotes that

- 1 -

ironically sometimes refer both the court and the defendants to case authority that supports the defendants rather than the plaintiff.

For example, plaintiff's counsel does not mention in his response that "when a defendant moves to dismiss for improper venue pursuant to a Rule 12 (b)(3) motion, the plaintiff bears the burden of proving that venue is proper." Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969). The case of Moore v. AT&T Latin America Corp., 177 F.Supp.2d 785, 788 (N.D. Ill. 2001), states the same thing, and that case was cited in the plaintiff's responsive brief for another purpose extraneous to present concern. Even more importantly, the Moore case (at 788) held that in evaluating a Rule 12(b)(3) motion, a court may consider facts beyond the complaint. The court held that where neither side has asked for an evidentiary hearing on the facts relevant to venue, the court accepts plaintiff's allegations to retain venue unless controverted by the defendant. Do the defendants controvert the factual averments made in the plaintiff's response? The clear answer is yes – in virtually every respect. Plaintiff has pulled allegations of fact out of thin air in a desperate attempt to compel the Illinois courts to hear a case that has very little to do with this state. Moreover, since the filing of the motion, the plaintiff has himself taken to harassing the various witnesses in Arizona that are listed by the defendants in their underlying motion. He has made it very difficult for the defendants to obtain affidavits from those witnesses on a voluntary basis without the compulsory process of the court.

As for the timeliness argument, the plaintiff has wholly misstated the applicable law and virtually ignored a series of cases from the Northern District of Illinois that would support the appropriateness and timeliness of the defendants' present motion.

Because of the large amount of both factual allegations and new factual allegations that have been raised by the plaintiff's response, the defendants are forwarding to the Court a more detailed brief in support of this Reply, and the attention of the Court is respectfully invited to review that brief in due consideration of the merits of this motion. Also attached to that brief are declarations indicating the evidence and witnesses that would controvert the plaintiff's latest allegations concerning venue.

Lastly, the defendants have concurrently filed a motion for an evidentiary hearing on these issues and would respectfully request the Court to defer consideration and determination of the defendants' motion to dismiss until that evidentiary hearing can be held.

WHEREFORE, Defendants Nasser Bashiri and Nancy Bashiri pray that this Court enter its Order granting the defendants' motion as requested in that underlying motion and either dismiss this case for lack of venue, or transfer the case to a more appropriate venue, such as the District of Arizona where a parallel case is presently pending dealing with the same parties and issues.

Respectfully submitted,

Nasser Bashiri
Nancy Bashiri
Nasser and Nancy Bashiri, Defendants
21911 N. 36th St.
Phoenix, AZ 85050
501 762-2525

## CERTIFICATE OF SERVICE

This to certify that on the 30th day of January 2008, a true and complete copy of the above and foregoing DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO PLAINTFF'S MOTION TO DISMISS AND REQUEST FOR HEARING with supporting brief and proposed orders was served on the opposing counsel by depositing in the United States mail addressed as follows:

Richard T. Reibman
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL 60601
Attorneys for Plaintiff

Nasser and Nancy Bashiri

- 4 -

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT SADLER,<br>    Plaintiff, | )<br>)<br>) | CASE NO. 07C-5464 |
| vs. | )<br>)<br>) | |
| NASSER BASHIRI and<br>NANCY BASHIRI, husband and wife,<br>    Defendants. | )<br>)<br>)<br>) | |

## BRIEF IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO PLAINTFF'S MOTION TO DISMISS AND REQUEST FOR HEARING

The plaintiff's response in opposition to the defendant's Motion to Dismiss, or in the Alternative, to Transfer the Case to Another District fails to mention, and completely overlooks a substantial body of case precedent that would mandate the transfer of this case to Arizona. First, the plaintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute. Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., 2000 U.S. Dist. LEXIS 2693, 2000 wl263973 at 8 (N.D. Ill. Mar. 6, 2000)(Williams J.).    None of the real property that is the subject of the present dispute is located in Illinois, and most is instead located in Arizona and Florida.  Secondly, the law in the 7th Circuit (which of course includes Illinois), is that the court should transfer "related litigation . . . to a forum where consolidation is feasible." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986). As the Court is aware, there is another case pending in the District of Arizona involving these same parties and involving the same issues involving the same real property. The only real difference between the two cases is that in the Arizona case Vincent Sadler's attorney is a party defendant. It would not be unreasonable to assume that the real motivation behind Mr. Reibman's opposition to the

motion to transfer the case to Arizona is based more on his own personal preference at being enabled to continue to litigate this case as an advocate, when he is in fact in actuality a party defendant that has no business representing anyone but himself. It makes far more sense for the Arizona district court to consolidate the two cases than it does for the Illinois court to do so, particularly where there is no substantial nexus between the State of Illinois and the issues and property involved in this case.

The Court's attention is respectfully invited to the following case authority - all of which is from the Northern District of Illinois and all of which resulted in a transfer of a district court case from the Northern District of Illinois to another jurisdiction pursuant to 28 U.S.C. § 1404(a)(*forum non conveniens*):

Aramark Management Services v. Martha's Vineyard Hospital, Inc., 2003 WL 21476091 (N.D. Ill. June 23, 2003)(granting motion to transfer venue from the Northern District of Illinois to the District of Massachusetts);

Finley v. Dun & Bradstreet Corp., 2006 U.S. Dist. LEXIS 19617 (N.D. Ill. March 30, 2006)(granting motion to transfer venue from the Northern District of Illinois to the District of New Jersey);

Brunswick Bowling v. Qubica USA, Inc., 2005 U.S. Dist. LEXIS 21366 (N.D. Ill. September 26, 2005)(granting motion to transfer venue from the Northern District of Illinois to the Middle District of Florida);

Garza v. Grand Trunk Western Railroad, Inc., 1999 U.S. Dist. LEXIS 1978 (N.D. Ill. February 22, 2999)(granting motion to transfer venue from the Northern District of Illinois to the Middle District of Michigan); and

General Accident Insurance Company v. The Travelers Corporation, 666 F.Supp. 1203 (N.D. Ill. 1987)(granting motion to transfer venue from the Northern District of Illinois to the Western District of Florida).

Finally, other arguments most recently raised by plaintiff's response to the defendant's motion are misleading and should be rejected. Plaintiff claims that defendant's motion is not timely because it was made after defendant filed his answer to the plaintiff's complaint. In accordance with Federal Rule of Civil Procedure 12(b)(3), the defense of improper venue may be made by motion rather than by responsive pleading. Plaintiff also relies heavily on the notion that the purported "agreement" of October 5-6, 2006, occurred in Chicago, thus providing a basis for venue in the Northern District. What plaintiff's counsel does not mention is that the defendants did not reside in Illinois in October 2006 and, as the facts will be developed demonstrate, the defendants were lured / tricked into returning to Chicago by the plaintiff for the sole purpose of manufacturing jurisdiction and venue where it would otherwise not exist.

As for the supposed litany of witnesses claimed by plaintiff's counsel to be Illinois residents, in the present context these witnesses are witnesses to nothing more than a contrived church meeting which should never have been referred to the court for disposition in the first place. The affidavits of these witnesses are nothing more than parroted tissues of lies created by a desperate plaintiff's counsel that sees his role in this case changing to that of being a defendant himself. The key facts involved in this case focus on the relationship of the parties prior to October 2006, and none of the defendant's so-called "witnesses" have anything to do with that.

WHEREFORE, Defendants Nasser Bashiri and Nancy Bashiri pray that this Court enter its Order granting the defendants' motion as requested in that underlying motion and either dismiss this case for lack of venue, or transfer the case to a more appropriate venue, such as the District of Arizona where a parallel case is presently pending dealing with the same parties and issues.

Respectfully submitted,

*Nasser Bashiri*
*Nancy Bashiri*

Nasser and Nancy Bashiri, Defendants
21911 N. 36th St.
Phoenix, AZ  85050
502  762-2525

## CERTIFICATE OF SERVICE

This to certify that on the 30th day of January 2008, a true and complete copy of the above and foregoing BRIEF IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO PLAINTFF'S MOTION TO DISMISS AND REQUEST FOR HEARING with supporting brief and proposed orders was served on the opposing counsel by depositing in the United States mail addressed as follows:

Richard T. Reibman
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL 60601
Attorneys for Plaintiff

Nasser and Nancy Bashiri

# EXHIBIT G

**4027758  OR: 4238 PG: 2949**
RECORDED in OFFICIAL RECORDS of COLLIER COUNTY, FL
06/05/2007 at 08:10AM DWIGHT E. BROCK, CLERK
           CONS      495372.00
           REC FEE       86.50
           DOC-.70     3467.80

Return to:
**Name:**   Commerce Title Company
**Address:**
5801 Pelican Bay Boulevard Ste 400,
Naples, FL 34108

Retn:
COMMERCE TITLE/FKA METROPOLITA
PICK UP

This Instrument Prepared by:
Lynne Tillman
Commerce Title Company
5801 Pelican Bay Boulevard Ste 400
Naples, FL 34108

SPACE ABOVE THIS LINE FOR PROCESSING DATA

Property Appraiser's Parcel Identification Number: 68986770140

# SPECIAL CONDOMINIUM WARRANTY DEED

**THIS SPECIAL WARRANTY DEED** is made the Tenth day of May, 2007, between

**Centex Homes, a Nevada General Partnership**

having a business address at: 5801 Pelican Bay Boulevard Suite 600, Naples, FL 34108
("Grantor") and

**Nasser Bashiri, a married man and Michael B. Davidson, a married man
as tenants in common**

having a mailing address of: 9213 Quartz Lane, Naples, FL 34120
("Grantee"),

**WITNESSETH**, that the said Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS
($10.00) and other valuable considerations, receipt and sufficiency of which is hereby acknowledged,
has granted, bargained, sold, remised, released, conveyed and confirmed unto said "Grantee", its
successors and assigns forever, following described land, situated, lying and being in the County of
**Collier**, State of **Florida**, to-wit:

**Condominium Unit 11-101, QUARTZ COVE AT THE QUARRY, a Condominium, according to the
Declaration of Condominium thereof, as recorded in Official Records Book 4163, Page(s)
2766 through 2899, and any amendments and/or supplemental declarations thereto, of the
Public Records of Collier County, Florida, together with an undivided interest in the common
elements.**

Grantee, by acceptance hereof, and by agreement with Grantor, hereby expressly assumes and
agrees to be bound by and to comply with all of the covenants, terms, conditions and provisions set forth
and contained in the aforedescribed Declaration, including, but not limited to, the obligation to make
payment of assessments for the maintenance and operation of the Condominium.

OR: 4238 PG: 2950

**SUBJECT TO** RESTRICTIVE COVENANTS, CONDITIONS, EASEMENTS AND RESERVATIONS OF RECORD and those items shown on Exhibit "A " and the restrictions on occupancy period and use of the property attached hereto as Exhibit "B" attached hereto and made a part hereof. And the said party of the first part does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever, except for real estate taxes for the year of closing and subsequent years and any special taxes or assessments entered against said property after the date of closing, restrictions and easements of record, if any, and those restrictions attached hereto.

**AND** the grantor hereby covenants with said grantee, that it is lawfully seized of said land in fee simple; that it has good right and lawful authority to sell and convey said land; that it hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under the grantor.

**In Witness Whereof** , Grantor has caused these presents to be executed in its name by its **Division Assistant Controller** and caused its Corporate Seal to be affixed hereto the day and year first above written.

(CORPORATE SEAL)

Centex Homes, a Nevada General Partnership
by Centex Real Estate Corporation,
a Nevada Corporation, its Managing General Partner

By: _____
Angelique S. Hysler, Division Assistant
Controller

Signed, sealed and delivered in our presence:

Witness Signature
Print Name: _____ PAMELA L. CONTRERAS

Witness Signature _____ Lynne Tillman
Print Name: _____

STATE OF **Florida**
COUNTY OF **Collier**

The foregoing instrument was acknowledged before me on this day _____ 5 10 07
by **Angelique S. Hysler, Division Assistant Controller** of Centex Real Estate Corporation, a Nevada Corporation, as the Managing General Partner of Centex Homes, a Nevada General Partnership, on behalf of the Partnership, who is personally known to me, and did not take an oath.

Lynne Tillman
Commission # DD289852
Expires: Feb. 10, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

_____
Notary Public Signature Lynne Tillman

_____
Printed Name of Notary Public
Notary Public in and for the County and State Aforesaid.
My Commission Expires: _____

OR: 4238 PG: 2951

ACCEPTED BY GRANTEE:

_Nasser Bashiri_ (signature)
Nasser Bashiri

_Michael B. Davidson_ (signature)
Michael B. Davidson

Signed, sealed and delivered in our presence:

#1
Witness Signature
Print Name: Michelle Downs

#2
Witness Signature
Print Name: Anthony Sayadian

State of ARKANSAS

County of GARLAND

**THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED** before me on **May 10, 2007**, by **Nasser Bashiri, a married man and Michael B. Davidson, a married man as joint tenants** who is/are personally known to me or has/have produced a valid driver's license as identification.

OFFICIAL SEAL
**BRANDON L. EMERSON**
Notary Public - Arkansas
Garland County
My Commission Expires: Jan. 5, 2015

NOTARY PUBLIC

Brandon L. Emerson
Notary Print Name
My Commission Expires: 1-5-15

# EXHIBIT H

## SunshineMLS

### General Property Information

| | | | | |
|---|---|---|---|---|
| **Address:** | 28677 SAN LUCAS LN #101 BONITA SPRINGS, Florida 34135-6347 | **ML#:** | 207016118 | |
| | | **Status:** | A-Active | **List Price: $479,** |
| **County:** | Lee | **(GEO) Area:** | BN12 | |
| **Property ID:** | 04-48-26-B4-00829.0101 | **Furnished:** | Unfurnished | |
| **Subdivision #:** | | **Subdivision:** | ENCLAVE | |
| | | **Development:** | PALMIRA GOLF AND COUNTRY CLUB | |
| **Legal Unit:** | | **Sec/Town/Rng:** | 4/48/26 | |
| **Block/Bldg:** | 829 | **Condo Fee:** | $1,586 Quarterly | |
| **Lot:** | 101 | **Master HOA:** | $533 Quarterly | |
| **Tax Year:** | 2006 | **HOA Fee:** | $81 Quarterly | |
| **Taxes:** | $6,025 | **Price/SqFt:** | $232.19 | |

**Special Assess.:** $0
**Tax Description:** City And County, No Homestead
**Legal:** ENCLAVE AT PALMIRA VI DESC IN OR 4841 PG 1413 BLDG 29 UNIT 101
**Virtual Tour URL:** http://www.visualtour.com/show.asp?sk=13&t=994314
**List Broker:** A Delta Realty of Naples Inc.



### Detailed Property Information

**Remarks by Listing Agent:**
Be the envy of your friends when you live in the beautiful Palmira Golf and Country Club, a guard, gated private golf course community. 2 bedrooms plus den, 2 bathrooms with attached 2 car garage - almost 2,100 sq. ft. of living area. Panoramic view of the golf course and lake from the western exposure screened wrap-around lanai. The home features ceramic tile floors, except in the bedrooms and den, 42" cabinets, granite counter-tops, and stainless steel appliances. This is a must see condominium coach home.

| | | | | | |
|---|---|---|---|---|---|
| **Building Desc:** | Carriage/Coach | **Building #:** | | **Elevator:** | None |
| **Ownership Desc:** | Condo | **Community Type:** | Gated, Golf Course, Golf Equity, Tennis | **Rear Exp.:** | W |
| **Building Design:** | Low Rise (1-3 Floors) | **Builder Product:** | No | **Year Built:** | 2005 |
| **Bedrooms:** | 2+Den | **Unit Floor:** | 1 | **Approx. Living Area:** | 2,063 |
| **Full Baths:** 2 | **Half Baths:** 0 | **Total Floors:** | 2 | **Approx. Total Area:** | 2,882 |
| **Garage Spaces:** | 2 - Attached | **Units In Building:** | 4 | **Cable:** | Yes |
| **Carport Spaces:** | | **Units In Complex:** | | | |
| **Parking:** | Paved Parking | **Lot Desc.:** | | **Golf Course** | |
| **Private Pool:** | No - | **Approx. Lot Size:** | 0XXX | | |
| **Private Spa:** | No - | **Guest House?** | | | |
| **Acres:** | 0.00 | **Guest House L.A.:** | | | |
| **Security:** | Alarm Unmonitored, Gated, Guard At Gate | **Construction:** | Concrete Block, Stucco | | |
| **Waterfront Desc.:** | Lake | **Roof:** | Tile | | |
| **Boat Access:** | None | **Flooring:** | Carpet, Ceramic Tile | | |
| **View:** | Golf Course, Lake | **Cool:** | Central Electric | | |
| **Bedroom:** | | **Heat:** | Central Electric | | |
| **Dining:** | Breakfast Room, Dining - Living, Eat-In Kitchen | **Water:** | Central | | |
| **Kitchen:** | Island, Pantry, Walk-In Pantry | **Sewer:** | Central | | |
| **Master Bath:** | Dual Sinks, Separate Tub And Shower | **Irrigation:** | Lake | | |
| **Rooms:** | Screened Lanai/Porch, Laundry Room in Residence | **Restrictions:** | Deeded, No Truck, No RV, No Commercial | | |
| **Windows:** | Single Hung | **Pets:** | With Approval | | |

**Interior Features:** Fire Sprinkler, Built-In Cabinets, Cable Prewire, Foyer, Laundry Tub, Pantry, Smoke Detectors, Volume Ceiling, Walk-In Closet, Window Coverings
**Exterior Features:** Shutters, Shutters Manual
**Equipment:** Auto Garage Door, Dishwasher, Disposal, Dryer, Microwave, Range, Security System, Self Cleaning Oven, Smoke Detector, Washer, Washer / Dryer Hook Up, Refrigerator/Icemaker
**Amenities:** Bike And Jog Path, Billiards, Business Center, Clubhouse, Community Pool, Exercise Room, Golf Course, Private Membership, Putting Green, Restrictions, Sauna, Sidewalk, Streetlight, Tennis Court, Underground Utilities, Community Room, Community Spa/Hot Tub
**Maintenance:** Legal/Accounting, Cable, Fidelity Bond, Lawn/Land Maint, Pest Control Exterior, Insurance, Rec Facilities, Reserve, Security, Water, Sewer, Street Lights

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Living Rm:** 15x16 | **Great Rm:** | **Dining Rm:** 17x10 | **Kitchen:** 13x13 | **Family Rm:** |
| **Master BR:** 16x15 | **2nd BR:** 14x11 | **3rd BR:** | **4th BR:** | **5th BR:** |
| **Den:** 12x12 | **Lanai:** | **Utility Rm:** | **Garage:** 23x20 | **Ceil Fans:** |

# EXHIBIT H-1

Richard T. Reibman
T 312.516.4442 F 312.264.2459
rreibman@schwartzcooper.com

SCHWARTZ  COOPER  CHARTERED
180 North LaSalle Street, Suite 2700, Chicago, Illinois 60601
T 312.346.1300 F 312.782.8416 www.schwartzcooper.com

May 7, 2007



**VIA FEDERAL EXPRESS – 2ND DAY AIR**
**Glen Ginsburg**
**A Delta Realty of Naples, Inc.**
**1415 Panther Lane**
**Suite 250**
**Naples, FL 34109**

Re: **Unit 101, 28677 San Lucas Lane, Bonita Springs**

Dear Mr. Ginsburg:

This law firm represents Vincent Sadler, an individual who resides in Chicago. Mr. Sadler is the beneficial owner of Unit 101 at 28677 San Lucas Lane in Bonita Springs, Florida (the "Property"). Although title may be in the name of Nasser Bashiri, Mr. Sadler is the true owner of the Property.

Enclosed is a copy of a "Memorandum of Agreement between Nasser Bashiri and Vince Sadler" which was recorded in Lee County. The purpose of this Memorandum is to make public Mr. Sadler's ownership interest in the Property.

It is our understanding that Mr. Bashiri has listed the Property for sale with you. <u>You are hereby notified that Mr. Sadler does not consent to the listing or sale of the Property and Mr. Bashiri has no authority from Mr. Sadler to list or sell the Property.</u> As the beneficial owner of the property, Mr. Sadler demands that you take no further action to sell the Property.

Very truly yours,

SCHWARTZ COOPER CHARTERED

By: _____
Richard Reibman

enc.

**EXHIBIT 6-1**

cc:    Vincent Sadler
       Debra MacDonald

# EXHIBIT I

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

VINCENT SADLER,                              )        CASE NO. 07C-5464
   Plaintiff,                            )
                                      )
vs.                                          )
                                        )
NASSER BASHIRI and                           )
NANCY BASHIRI, husband and wife,             )
   Defendants.                           )
                                        )

**FILED**

NOV 2 6 2007 *eu*
11-26-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TO TRANSFER THE CASE TO ANOTHER DISTRICT

*COMES NOW*, the Defendants, Nasser Bashiri and Nancy Bashiri, who respectfully request this Honorable Court pursuant to Fed.R.C.P. 12(b) to dismiss the Plaintiff's Complaint for lack of venue; or, in the alternative, to transfer this matter to the United States District Court for the District of Arizona. In support thereof, Defendants respectfully state as follows:

1. The plaintiff filed his Complaint on September 27, 2007. A true and correct copy of that Complaint is attached as Exhibit A.

2. In the Complaint, it is alleged that the defendant breached what the plaintiff calls a "settlement agreement" regarding the purchase, sale, maintenance, and distribution of the proceeds from several investment properties. None of the subject real property is located in the State of Illinois. Instead, most of the subject property is located in Arizona and Florida.

- 1 -

3. Plaintiff's Complaint is based solely on diversity of citizenship, the defendants being citizens of the State of Arizona, and the plaintiff's being citizens of the State of Illinois.

4. The plaintiff argues that venue is appropriate in the Northern District of Illinois solely because Chicago is where the so-called "settlement agreement" is said to have occurred, specifically at a church meeting in Chicago where all of the parties concerned (plaintiffs, defendants, and the church members) attempted to reach a settlement of the party's differences which had been submitted to the Church for disposition. Plaintiff's complaint does not state the location of the agreement between the parties, but instead relies on the location of this intervening "settlement agreement". The plaintiff does not assert that the defendants are residents, domicilliaries, or otherwise citizens of Illinois for purposes of venue. The plaintiff does not claim that any of the subject properties are located in Illinois – in fact, his allegations state just the opposite. Instead, the plaintiff appears to have chosen to file this suit in Northern Illinois solely out of concern for his own convenience, and this is not a legitimate basis for venue in federal diversity action.

5. The plaintiff asserts that a number of witnesses to the purported settlement agreement reside in Illinois, but whether this is true or not, the witnesses referred to by the plaintiff are merely witnesses to the signatures of the parties and have no substantial testimony to offer in and of themselves. The defendants, on the other hand, have many Arizona witnesses to present that were first hand witnesses of the actions of the parties and of the maintenance of their real property that will not be available to testify and refute the allegations of the plaintiff if this case is maintained in Illinois. These include both expert and lay witnesses, and they are described more specifically herein.

- 2 -

6. A substantial portion of the acts or omissions giving rise to the civil action did not occur in Cook County, Illinois, but instead occurred in Maricopa County and Yavapai County, Arizona.

7. The plaintiff has filed suit in the Northern District of Illinois for no other reason than that trying the case in Arizona (where the defendants live, where most of the relevant witnesses reside, and where most of the subject property is located) would be inconvenient to the plaintiff and its counsel, and plaintiff's convenience in and of itself, is not legitimate basis for venue.

8. It cannot reasonably be asserted that the Northern District of Illinois is a convenient forum for the Plaintiff.

### COUNT I
### MOTION TO DISMISS FOR LACK OF VENUE
### UNDER FED.R.C.P. 12(b)(3)

9. The defendants incorporate all allegations in all preceding paragraphs as if fully set forth herein at length.

10. Pursuant the Federal Rules of Civil Procedure, the defense of "improper venue" may, at the option of the pleader, be made by motion instead of a responsive pleading. Fed.R.C.P. 12(b)(3).

11. Venue is proper in a judicial district where a defendant resides if all defendants reside in the same state; in a district where a substantial part of the events giving rise to the claim took place; or in a district where any defendant is subject to personal jurisdiction, if there are no other appropriate venues. See, 28 U.S.C.A. §1391(a).

12. Under the United States Code:

    (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C.A. §1391(a).

13. If a district court finds venue to be improper, that court should dismiss the case, or, if justice requires, transfer the case to a district where venue is proper. 28 U.S.C.A. §1406(a).

14. In this instance case venue is wholly improper in the Northern District of Illinois.

15. For the reasons set forth in the moving Defendant's Brief in Support of Motion to Dismiss, which is attached hereto and incorporated by reference herein as if fully set forth at length, it is averred that there is no provision in §1391 for venue to lie in the Northern District of Illinois; therefore, this civil action should be dismissed for lack of venue pursuant to Fed.R.C.P. 12(b)(3) and 28 U.S.C.A. §1406(a).

WHEREFORE, the Defendants Nasser and Nancy Bashiri  respectfully move this Honorable Court to grant this Motion and dismiss this civil action for lack of venue, in accordance with the attached proposed Order.

-4-

## COUNT II
### MOTION IN THE ALTERNATIVE TO TRANSFER VENUE OF THIS MATTER
### TO DISTRICT OF ARIZONA ON THE GROUNDS OF
### *FORUM NON CONVENIENS*

16. Moving Defendants incorporate all allegations in all preceding paragraphs as if fully set forth herein at length.

17. Under the Statutes of the United States, it is indicated that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.S. § 1404(a).

18. The moving Defendants submit that, under the facts of this case as alleged in the Complaint, the plaintiff could have brought this action in the United States District Court for the District of Arizona, and for the sake of the convenience of the parties and witnesses, this civil action must therefore be transferred to that District.

19. For the reasons set forth in the moving defendants' Brief in Support of Motion to Dismiss, which is attached hereto and incorporated by reference herein as if fully set forth at length, it is averred that this Court should find that the balance of factors weighs in favor of an Arizona forum; and that in these circumstances the defendants' motion to dismiss for *forum non-conveniens* should be granted.

20. Another distinct factor mitigating in favor of transferring this case to the District of Arizona is the pending action in the Arizona federal courts involving these same parties and pertaining to the same property that is the subject of the plaintiff's Complaint in Northern Illinois. Immediately following the filing by the plaintiff of its Complaint in Northern Illinois, plaintiff's counsel filed various notices of *lis pendens* in Arizona and Florida relating to the real properties that are the subject of the Illinois filing.

- 5 -

Because plaintiff and plaintiff's counsel filed notices of *lis pendens* relating to property that is not affected by the litigation, the defendants have commenced a federal court action in the District of Arizona requesting both money damages and specific performance relating to the groundless filing of the *lis pendens*. As with the underlying Illinois filing by the plaintiff, the Arizona courts are in a much better position to determine the merits of the plaintiff's present claims along with the issues raised by defendants in the Arizona court case that has already been filed.

WHEREFORE, the defendants Nasser and Nancy Bashiri respectfully moves this Honorable Court to grant this Motion and transfer this civil action to the United States District Court for the District of Arizona in accordance with the attached proposed Alternative Order.

Respectfully submitted,

*Nasser Bashiri*

*Nancy Bashiri*

Nasser and Nancy Bashiri, Defendants
7222 East Gainey Ranch Road, Unit 238
Scottsdale AZ 85258
501 762-2525

- 6 -

## CERTIFICATE OF SERVICE

This to certify that on the 20 _th_ day of November, 2007, a true and complete copy of the

above and foregoing  DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,

TO TRANSFER THE CASE TO ANOTHER DISTRICT with supporting brief and proposed

orders was served on the opposing counsel by depositing in the United States mail

addressed as follows:

Richard T. Reibman
Schwartz Cooper Chartered
180 North La Salle, Suite 2700
Chicago, IL  60601
Attorneys for Plaintiff

**Nasser and Nancy Bashiri**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

VINCENT SADLER,              )
    Plaintiff,               )     CASE NO. 07C-5464
                    )
                    )
vs.                          )
                    )
NASSER BASHIRI and           )
NANCY BASHIRI, husband and wife, )
    Defendants.              )
                    )

## ALTERNATIVE ORDER

AND NOW, this _____ day of _____, 2007, upon due consideration of the

Defendants Nasser Bashiri and Nancy Bashiri's Motion to Dismiss under Rule 12(b) /

Motion to Transfer Venue, and any Response thereto, it is hereby ORDERED and

DECREED that the defendants' Motion is GRANTED, and it is further

ORDERED that the above-captioned civil action is hereby TRANSFERRED, for the

convenience of the parties and witnesses, to the United States District Court for the

District of Arizona; with the costs of the transfer to be paid by the Plaintiff.

                            BY THE COURT:

                            _____
                            U.S.D.J.